IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 08-25004-CMB |
| | ) | |
| MICHAEL W. DAVIS and | ) | Chapter 7 |
| SHEILA A. DAVIS, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| VIOLET LOUISE ROSE and | ) | Adversary No. 11-2194-CMB |
| WILLIAM ROSE, | ) | |
| PERSONAL REPRESENTATIVES | ) | |
| OF THE ESTATE OF | ) | |
| KATHERINE M. LEE, DECEASED | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL W. DAVIS and | ) | |
| SHEILA A. DAVIS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The matter before the Court is a Complaint filed by Violet Louise Rose and William Rose ("Plaintiffs"), Personal Representatives of the Estate of Katherine Marie Lee, seeking a declaration of nondischargeability of debt allegedly owed to the Estate of Katherine Marie Lee by Debtors Michael W. Davis ("Michael") and Sheila A. Davis ("Sheila").[1] Plaintiffs assert that

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(I), and the Court will enter final judgment in this adversary proceeding. However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that the Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

all liabilities of Michael and Sheila (together, "Defendants") due and owing to the Estate of Katherine Marie Lee must be deemed nondischargeable pursuant to 11 U.S.C. §523(a)(4) as Sheila and Michael committed fraud or defalcation while acting in a fiduciary capacity. For the reasons stated herein, the Court finds that Plaintiffs have not met their burden to prove nondischargeability as to either of the Defendants.

I.      **Background and Procedural History**

Defendants filed a Chapter 13 petition on July 31, 2008, and the case was converted to Chapter 7 on January 18, 2011. On February 28, 2011, Defendants filed an Amended Schedule F, which identifies the Estate of Katherine M. Lee as an unsecured creditor with a claim against Defendants arising from a power of attorney dated March 1, 2005 ("Power of Attorney") granted by Katherine M. Lee ("Katherine"), Sheila's grandmother. On the same date, Defendants filed an Amended Post-Conversion Report, providing that certain property was acquired after the commencement of the case but before entry of the conversion order, namely $13,747.24 in a PNC Bank checking account ("PNC Account"). The PNC Account was previously a joint account held by Katherine and Sheila, and the balance of $13,747.24 represents the funds remaining in the account at the time of Katherine's death.

Plaintiffs petitioned the Orphans' Court Division of the Court of Common Pleas of Fayette County, Pennsylvania, for an order directing Defendants to file an accounting reflecting the disposition of the proceeds of the sale of Katherine's property sold by Michael pursuant to his authority under the Power of Attorney. On March 3, 2011, upon agreement of the parties, an order was entered directing the requested accounting to be filed.  Shortly thereafter, Plaintiffs were made aware of the pending bankruptcy.

2

Plaintiffs then filed their Complaint commencing this adversary proceeding against Defendants on April 6, 2011.  In their Complaint, Plaintiffs contend that Michael, acting as Katherine's Agent under the duly executed Power of Attorney and Sheila, as joint owner of the PNC Account with Katherine, improperly comingled funds and unlawfully obtained Katherine's assets.  The trial was held on April 18, 2012.  Plaintiffs and Defendants filed their Post-Trial Briefs on June 15, 2012.  This matter is now ripe for decision.

## II.     Facts

The controlling facts of this case are largely undisputed.  The only witnesses called at trial were Sheila and Michael. The Court finds their testimony credible. Based upon the evidence presented, the Court finds as follows.

In approximately 1998, at Katherine's request and due to Katherine's poor health, Katherine's brother added Sheila to Katherine's only checking account, the PNC Account.  All monies deposited into the PNC Account belonged to Katherine.  Sheila did not deposit any of her own funds into the PNC Account, but withdrew funds to pay for Katherine's care.  From 1998 forward, Sheila and Michael provided care for Katherine, as her health continuously declined.  Sheila paid for Katherine's medical, housing, and daily living costs with funds from the PNC Account and, at times, from her and Michael's own funds.  From the time she was named as co-owner of the account and until Katherine's death, Sheila handled Katherine's affairs by writing and signing checks on Katherine's behalf.

On March 1, 2005, Katherine designated Michael as her agent pursuant to the Power of Attorney.  Although Sheila was named as the alternate agent in the Power of Attorney, she was

only to act as such if Michael was unable to do so. Based on the testimony at trial, the Court finds that no such circumstances ever arose.

On April 2, 2009, Michael, through his authority as attorney-in-fact for Katherine, executed a deed to real property owned by Katherine. The closing on the sale of the real property generated net proceeds of $30,379.54. Michael deposited the proceeds of the sale of the real property into the PNC Account. After the sale of the real property, a significant portion of the sale proceeds was used for Katherine's care, as Katherine's monthly income was inadequate to cover her monthly expenses.

Also pursuant to the Power of Attorney and prior to Katherine's death in December of 2009, Michael deposited into the PNC Account approximately $7,000, representing proceeds from the sale of personal property, and $616.30 a month, representing pension checks sent to Katherine and deposited on her behalf.

As co-owner of the PNC Account, Sheila generally used the funds for the direct benefit of Katherine. However, in July of 2009, Sheila withdrew approximately $2,000, used by Sheila and Michael to fund a trip to Florida to visit a terminally ill child. She also withdrew a total of $750, representing gifts to Sheila's daughter, and Katherine's great-granddaughter, Amanda. Sheila testified, and the Court finds, that Katherine had in the past routinely given similar monetary gifts to Amanda to help pay for Amanda's school supplies as Amanda also assisted with Katherine's care.

The instant dispute revolves around the Defendants' conduct with respect to Katherine's funds.

4

**III.**    **Discussion**

Plaintiffs seek a finding of nondischargeability pursuant to §523(a)(4), which excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity."[2] Plaintiffs contend that the Defendants improperly handled and used Katherine's funds for their own benefit.

Generally, exceptions to discharge are construed narrowly against the creditor and in favor of the debtor due to the bankruptcy system's underlying concern for providing debtors a fresh start. *Boston Univ. v. Mehta* (*In re Mehta*), 310 F.3d 308, 311 (3d Cir. 2002). To prevail under §523(a)(4), a plaintiff must show that: (1) debtor was acting in a fiduciary capacity; and (2) debtor committed fraud or defalcation while acting in that capacity. *Subich v. Verrone* (*In re Verrone*), 277 B.R. 66, 71 (Bankr.W.D.Pa.2002). Fraud or defalcation while acting in a fiduciary capacity must be proven by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991). The Court now turns to the requirements for establishing nondischargeability under §523(a)(4).

Federal law controls who is a fiduciary for purposes of § 523(a)(4). *In re Verrone,* 277 B.R. at 71. "Fiduciary" is defined more narrowly under the dischargeability exception than under common law, as an individual may qualify as a fiduciary under state law but not for purposes of the dischargeability exception. *In re Verrone,* 277 B.R. at 71-72. Although the concept of

---

[2] Also pursuant to §523(a)(4), a debt for embezzlement or larceny is excluded from discharge. Without citing to a subsection of §523 in their Complaint, Plaintiffs alleged fraud, defalcation, embezzlement, and unlawful taking of assets. Because Plaintiffs, both at trial and in their Post-Trial Brief, narrowed their claim to include only fraud and defalcation under §523(a)(4), the Court need not decide whether Defendants' alleged debt is nondischargeable due to embezzlement or larceny. However, the Court notes that both embezzlement and larceny require fraudulent intent. *See DirecTV, Inc. v. Figler* (*In re Figler*), 391 B.R. 565, 571 (Bankr. W.D. Pa. 2008); *Telmark, LLC v. Booher* (*In re Booher*), 284 B.R. 191, 213 (Bankr. W.D. Pa. 2002). For the reasons stated herein, the Court finds no evidence of fraudulent intent. Therefore, Plaintiffs would be unable to prove embezzlement or larceny.

5

"fiduciary" in the dischargeability context is a narrowly defined question of federal law, courts look to state law to determine whether the requisite trust relationship exists. *Id.* at 72. To be a fiduciary for dischargeability purposes, the debtor must be a trustee under an "express" or "technical" trust. *Id*. "Constructive and *ex maleficio* trusts do not qualify." *Id.* For an express or technical trust to exist under Pennsylvania law, the following elements must be present: (a) an express intention to create a trust; (b) an ascertainable *res*; (c) a sufficiently certain beneficiary; and (d) a trustee who owns and administers the *res* for the benefit of the beneficiary. *Id*. The burden of proving the existence of an express trust is on the party asserting its existence. *See Brockway Pressed Metals, Inc. v. Eynon Assocs.* (*In re Brockway Pressed Metals, Inc.*), 363 B.R. 431, 440 (Bankr. W.D. Pa. 2007).

For purposes of the dischargeability exception for fraud by a fiduciary, "[f]raud … obviously requires some level of willful misconduct and lack of good faith; mere negligence, even if characterized as gross negligence, is not the same thing as fraud." *LaMacchia v. Tarbell* (*In re Tarbell*), 440 B.R. 668, 675 (Bankr.W.D.Pa. 2010) (citing In re *Scheidmantel*, 868 A.2d 464, 484 (Pa.Super.Ct. 2005)). In *Tarbell*, a finding that the debtors failed to meet the standard of due care required of a fiduciary under Pennsylvania law did not establish fraud. *In re Tarbell*, 440 B.R. at 675. "Actual fraud—i.e., fraud in fact—is required." *In re Verrone,* 277 B.R. at 72 (citing *Roussos v. Michaelides* (*In re Roussos*), 251 B.R. 86, 91–92 (B.A.P. 9th Cir. 2000)). Moral turpitude or intentional wrongdoing must be present, and implied or constructive fraud will not suffice. *In re Verrone,* 277 B.R. at 72 (citing *Bell v. Berry* (*In re Berry*), 174 B.R. 449, 453 (Bankr.N.D.Tex.1994)).

"To find that a debt owed . . . is not dischargeable pursuant to §523(a)(4) on account of defalcation, the creditor must prove that: (1) there was a pre-existing fiduciary relationship

6

between debtor and the creditor; (2) debtor acted in violation of that relationship; and (3) the creditor suffered an economic loss as a consequence." *Pa. Lawyers Fund for Client Sec. v. Baillie* (*In re Baillie*), 368 B.R. 458, 469 (Bankr.W.D.Pa. 2007) (citing *Commonwealth Land Title Company v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005)). The creditor has the burden of proving each of these elements by a preponderance of the evidence. *In re Baillie,* 368 B.R. at 469 (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). The Court notes the divergent standards for establishing defalcation under §523(a)(4), and adopts that of *In re Tarbell*, *supra*, which accepts the standard discussed in *Chao v. Rizzi,* No. 06-711, 2007 U.S. Dist. LEXIS 57773, 2007 WL 2317335 (W.D. Pa. Aug. 8, 2007). *See In re Tarbell,* 440 B.R. at 675-76.  While declining to set forth the exact level of culpability that would be required, the *Chao* court determined that defalcation as used in §523(a)(4) requires some showing of affirmative misconduct and "'something more' than mere negligence or innocent mistake[.]" *Chao,* 2007 U.S. Dist. LEXIS 57773 at *9, 2007 WL 2317335 at *3 (citing *Silver Care Ctr. v. Parks*, No. 05-37154, 2007 Bankr. LEXIS 2372, *51-53, 2007 WL 2033380, *16-17 (Bankr. D.N.J. July 10, 2007)).

    In order to prevail, Plaintiffs must prove that either or both Sheila and Michael committed fraud or defalcation while serving in a fiduciary capacity.  The Court will first examine Sheila's actions under the dischargeability exception and will then turn to Michael's conduct.

    <u>Sheila</u>

    The withdrawals at issue were made by Sheila in the amount of approximately $2,000 for the Florida trip and $750 for Amanda's gifts.  To the extent that Sheila made any other withdrawals that the Plaintiffs would contest, the same analysis would apply.

7

In order to establish that Sheila was acting in a fiduciary capacity under the dischargeability exception, the PNC Account must satisfy the requirements of an *express* trust.[3] Accordingly, the debtor must have either expressly signified her intention at the outset of the transaction or must have been clearly put on notice by some document in existence at the outset that she was undertaking the special responsibilities of a trustee to account for her actions. *Office of Pub. Guardian v. Messineo* (*In re Messineo*), 192 B.R. 597, 600 (Bankr. D.N.H. 1996) (citing *BAMCO 18 v. Reeves* (*In re Reeves*), 124 B.R. 5, 10 (Bankr. D.N.H. 1990)). No such intent has been established by Plaintiffs. Furthermore, the Court notes that Pennsylvania's Multiple-Party Accounts Act ("MPAA") allows for the creation of both a trust account and a joint account. 20 Pa. Cons. Stat. Ann. §6301. Although both parties assert that the PNC Account is a joint account, Plaintiffs have not alleged, nor established, that the PNC Account is a trust account, or otherwise constitutes an express trust. Plaintiffs have presented no evidence that (1) Sheila intended to act in a fiduciary capacity at the time she was added to Katherine's joint account or (2) that Katherine intended to establish the PNC Account as a trust account. *See In re Levinson Steel Co.*, Nos. 90-00631-JKF, 90-00632-JKF, 1993 WL 293213, *6 (Bankr. W.D. Pa. Apr. 6, 1993) (requiring evidence of an express intent to create a trust as a primary element of establishing the existence of an express trust). Furthermore, even under state law it has been held that withdrawing funds from a joint bank account does not create a fiduciary duty when withdrawals are done as a joint owner and not as an agent. *In re Estate of Hernandez*, 16 Pa. D. & C.5th 90,

---

[3] The Court is addressing the possibility of an independent fiduciary relationship between Sheila and Katherine solely because of a statement made in the Plaintiffs' Post-Trial Brief, which appears to change their position at trial. When the Court asked Plaintiffs' counsel at trial to clarify on the record the Plaintiffs' position as to Sheila's fiduciary relationship to Katherine, Plaintiffs' counsel specifically said any fiduciary duty Sheila owed to Katherine was derivative and thus apparently completely dependent upon a finding that Michael acted with fraud or defalcation while acting in a fiduciary capacity.

96-97 (Pa. Com. Pl. 2010) appeal quashed, 30 A.3d 531 (Pa. Super. Ct. 2011). The Court therefore finds that Plaintiffs have not met their burden in establishing that Sheila was acting in a fiduciary capacity with respect to any actions taken by virtue of being a joint account holder with Katherine.[4] Nonetheless, even if Sheila were found to have been in a fiduciary relationship with Katherine under the dischargeability exception, the Court finds that Plaintiffs have not met their burden to prove fraud or defalcation.

Under the fraud standard set forth above, Plaintiffs have not proven that Sheila acted with actual fraud when she withdrew funds. This Court finds the monetary gifts made to Amanda to be consistent with Katherine's previous conduct based on the credible testimony. As for the Florida trip, Sheila admitted that she used money from the PNC Account. However, she testified that she intended to replace the money at the time she made the withdrawal. Sheila also testified that she initially purchased the flight tickets with her own money, but discovered on the way to the airport that the flight was booked to depart from the wrong airport. Sheila used funds from the PNC Account to purchase new tickets because she and Michael did not have enough money in their own account and the airline could not refund their money to their credit card over the phone prior to their rebooking new flights. The Court finds Sheila's testimony credible as to her intention to repay the funds at the time she used them. Although Sheila ultimately did not replace the funds in the five months between the Florida trip and Katherine's death, the Court notes that throughout the years Sheila acted as caregiver to Katherine, she would at times use her

---

[4] Sheila's actions appear to be related strictly to her role as joint account holder. Although Sheila was named in the Power of Attorney as an alternative to Michael, the document provided that Sheila would become Katherine's attorney-in-fact "[i]n the event that [Michael] is unable to act in accordance herewith." There is no evidence that Michael was ever unable to act as Katherine's attorney-in-fact. Sheila had been accessing the PNC Account through her authority as co-owner since approximately 1998, prior to the execution of the power of attorney in 2005. Therefore, Sheila was acting pursuant to her co-ownership of the PNC Account, and not pursuant to the power of attorney. Plaintiffs also took this position at trial.

own money from her separate bank account to pay for Katherine's care as needed. Furthermore, pursuant to the MPAA, the balance remaining on deposit in the PNC Account at Katherine's death belonged to Sheila as the sole surviving owner of the joint account, as there is no clear and convincing evidence of a different intent at the time the account was created. 20 Pa. Cons. Stat. Ann. §6304(a). Without any evidence to the contrary, it is reasonable to conclude that Katherine intended for her granddaughter to receive the remaining funds as her primary caretaker. Therefore, the funds Sheila withdrew were funds she would have received anyway several months later upon Katherine's death. For these reasons, the Court finds that Plaintiffs have failed to prove by a preponderance of the evidence that Sheila acted with the requisite intent needed to establish fraud.

Plaintiffs also failed to prove that Sheila's conduct constituted defalcation, as they have not established that Sheila's withdrawal of funds constituted affirmative misconduct which caused harm to Katherine. The Plaintiffs offered no evidence that the PNC Account was ever overdrawn during Katherine's lifetime or that Katherine's needs were not met at any time while Defendants were caring for her. In fact, at the time of Katherine's death, over $13,000 remained in the account. Furthermore, any balance remaining in the account belonged to Sheila upon Katherine's death pursuant to the MPAA. Plaintiffs therefore have not met their burden of establishing defalcation.

<u>Michael</u>

The Court now turns to whether Michael committed fraud or defalcation while acting in a fiduciary capacity. The following deposits made by Michael are at issue: $30,379.54 of proceeds

from the sale of real property, $7,000 of proceeds from the sale of personal property, and $616.30 a month in pension checks for a total of approximately nine months.[5]

Michael deposited funds into the PNC Account pursuant to his authority under the Power of Attorney. A fiduciary relationship is established for purposes of §523(a)(4) when an agent is entrusted with money or property under a power of attorney. *In re Baillie,* 368 B.R. at 470. The Court therefore finds that Michael did act in a fiduciary capacity which arose when he was entrusted with Katherine's property pursuant to the Power of Attorney.

While in his role as fiduciary, the only acts Michael performed which could have constituted fraud or defalcation were depositing the proceeds from the sale of the real and personal property and the pension checks into the PNC Account and failing to account for these deposits. Plaintiffs allege that Michael committed fraud by depositing Katherine's funds into the PNC Account, "thereby permitting [Sheila] unauthorized access" to such funds.

Plaintiffs presented no authority for their position that Michael had a duty to deposit the funds elsewhere, and the PNC Account was Katherine's only checking account. It is noteworthy that it is not a breach of fiduciary duty for an attorney-in-fact to deposit funds into a joint account co-owned by both a beneficiary and the attorney-in-fact. *In re Novosielski*, 992 A.2d 89 (Pa. 2010) (agent who was co-owner of joint account with principal was permitted to deposit principal's funds into the account and inherit the account upon the principal's death). The Court notes that Sheila had been a joint owner of the PNC Account for years prior to Michael's execution of the Power of Attorney. Furthermore, testimony at trial revealed that Katherine's

---

[5] The Court notes that Plaintiffs also raised the issue of a second monthly pension check and a monthly social security check, which were both directly deposited into the PNC Account. Testimony at trial revealed that these direct deposits were set up at the direction of Katherine by another family member and long before Michael was named as Katherine's Agent pursuant to the Power of Attorney. As such, the Court will only address the deposits of the proceeds of the sales of real and personal property and the pension checks that were deposited by Michael.

11

brother helped Katherine add Sheila to the PNC Account and set up direct deposits for pension checks and social security checks. This is further convincing evidence of Katherine's intent to have her funds deposited into the PNC Account while Sheila was an account holder. Thus, Michael's acts of depositing into the account were simply a continuation of Katherine's previous conduct.  Furthermore, even if Sheila's withdrawals had been fraudulent, her fraudulent acts could not be imputed to Michael, as fraudulent practices of one spouse are not automatically imputed to the other spouse for purposes of nondischargeability. *Stevens v. Antonious* (*In re Antonious*), 358 B.R. 172, 184 (Bankr. E.D. Pa. 2006) (citing *Gannett v. Carp* (*In re Carp*), 340 F.3d 15, 26 (1st Cir. 2003)).  The Court therefore finds that Michael's acts of depositing Katherine's funds into the PNC Account did not constitute fraud or defalcation under the dischargeability exception.

At this point, it is unclear whether Michael would be able to provide a sufficient accounting.  However, the parties agreed at trial that an accounting would only be needed if the debt is found to be nondischargeable.  Furthermore, Michael testified at trial that he has some receipts and is unable to afford the cost of having copies of cancelled checks produced. No evidence was presented that Michael acted with willful or affirmative misconduct. Additionally, as noted above with respect to Sheila, Plaintiffs did not prove that either Katherine or her estate suffered any loss as the balance in the checking account became Sheila's automatically on Katherine's death.  Therefore, the Court finds that Michael did not commit fraud or defalcation while acting in a fiduciary capacity.

**IV.    Conclusion**

For the foregoing reasons, the Court finds that Defendants did not commit fraud or defalcation while acting in a fiduciary capacity. The Court finds from Defendants' testimony that they were well-intentioned but unsophisticated in legal terminology and principles. Any debt due and owing to the Estate of Katherine Marie Lee is dischargeable under §523(a)(4). Therefore, the relief sought in Plaintiffs' Complaint is denied. An appropriate order will be entered.

Date: August 2, 2012                              __/s/ Carlota M. Böhm_____
                                                                                      Carlota M. Böhm
                                                                                      United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
       Office of the United States Trustee
       Robert H. Slone, Esq., Chapter 7 Trustee
       John P. Vetica, Jr., Esq., Counsel to Plaintiffs
       Violet Rose, Plaintiff
       William Rose, Plaintiff
       Charles O. Zebley, Jr., Esq., and David White, Esq., Counsel to Debtors/Defendants
       Michael and Sheila Davis, Debtors/Defendants